CLAUDE WRIGHT, JR., AND EAST ORANGE PERSONNEL ASSOCIATION, RESPONDENTS, v. BOARD OF EDUCATION OF THE CITY OF EAST ORANGE, ESSEX COUNTY, APPELLANT.

Argued November 26, 1984—Decided May 7, 1985.

114

*Melvin C. Randall* argued the cause for appellant (*Love & Randall,* attorneys).

*Barry A. Aisenstock* argued the cause for respondents (*Oxfeld, Cohen & Blunda,* attorneys).

*Robert E. Anderson, Jr.,* General Counsel, submitted a brief on behalf of amicus curiae Public Employment Relations Commission.

*Russell Weiss, Jr.,* Associate Counsel, submitted a brief on behalf of amicus curiae New Jersey School Boards Association (*Paula A. Mullaly,* General Counsel, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 97 *N.J.* 579 (1984), to review the Appellate Division's determination that *N.J.S.A.* 18A:17–3 does

not foreclose collective negotiations between a school board and the public employee representative on the subject of tenure for public school custodians. We hold that the provision in the specific agreement at issue that grants tenure to custodians after three years of employment is not barred by the statute and is within the scope of collective negotiations. Hence, we affirm.

I

On October 5, 1977 the East Orange Board of Education (Board) hired petitioner, Claude Wright, Jr., as a public school custodian. Petitioner's employment was governed by a series of successive contracts for fixed periods not in excess of twelve months. On or about May 20, 1981, the Board gave Wright notice that his employment would not be renewed for the 1981–82 school year.

During the period of his employment Wright was a member of the East Orange Personnel Association (Association), which had entered into a negotiated agreement[1] with the Board. Article XIII of the agreement provided:

Tenure: All members of the bargaining unit shall receive tenure after three years of employment.

It is undisputed that petitioner had been employed for more than three years when the Board terminated his employment. Wright therefore claimed a right to tenure by virtue of the unambiguous provision in the agreement. In denying tenure the Board relied on *N.J.S.A.* 18A:17–3, which reads as follows:

Every public school janitor of a school district shall, unless he is appointed for a fixed term, hold his office, position or employment under tenure during good behavior and efficiency and shall not be dismissed or suspended or reduced in compensation, except as the result of the reduction of the number of janitors in the district made in accordance with the provisions of this title or except for

---

[1]Although the majority representative changed during the period of petitioner's employment so that there was more than one collective negotiation agreement, the contract language pertaining to tenure remained the same in each agreement.

neglect, misbehavior or other offense and only in the manner prescribed by subarticle B of article 2 of chapter 6 of this title.

Wright petitioned the Commissioner of Education, seeking reinstatement. In its answer to the petition the Board pointed to Wright's appointment for a fixed term as the basis for denying him tenure. The parties agreed on a joint stipulation of facts, and the controversy was submitted to an Administrative Law Judge (ALJ). As there were no essential facts in dispute, petitioner moved for summary judgment. The ALJ concluded that pursuant to Article XIII of the labor agreement Wright was automatically entitled to tenure after three years of employment. Accordingly, the ALJ ruled that the Board's termination of petitioner was improper.

On the Board's appeal the Commissioner of Education reversed the ALJ, holding that because the Board had employed Wright under fixed contracts that expired annually on their own terms, *N.J.S.A.* 18A:17–3 precluded tenure status for the petitioner regardless of the terms of the negotiated contract. The State Board of Education affirmed the Commissioner's decision, but the Appellate Division reversed, 194 *N.J.Super.* 181 (1984), holding that the statute did not stand in the way of the valid negotiation of tenure as set forth in Article XIII of the agreement.

## II

It is now well settled that although public employees have a legitimate interest in engaging in collective negotiations, the scope of negotiations in the public sector is limited. *In re IFPTE Local 195 v. State,* 88 *N.J.* 393, 401 (1982); *accord Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ.,* 78 *N.J.* 144, 162 (1978); *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 79–80 (1978). In order to determine whether a subject is negotiable, a court must balance the competing interests of the government employer and the public employees by considering "the extent to which collective negotiations will impair the determination of government policy." *In re IFPTE Local 195, supra,* 88 *N.J.* at 402.

In an effort to "consolidate" its earlier opinions on this subject,[2] this Court adopted a three-part test for scope-of-negotiations determinations. *In re IFPTE Local 195, supra,* 88 *N.J.* at 404. First, a subject is negotiable only if it intimately and directly affects the work and welfare of public employees. *Id.* at 403. Second, an item is not negotiable if it has been preempted by statute or regulation. *Id.* Third, a topic that affects the work and welfare of public employees "is negotiable only if it is a matter 'on which negotiated agreement would not *significantly* interfere with the exercise of inherent management prerogatives pertaining to the determination of government policy.'" *Id.* at 404, quoting *In the Matter of Paterson Police PBA Local No. 1 v. Paterson,* 87 *N.J.* 78, 86 (1981).

Applying the foregoing test to these proceedings, we have little difficulty with the question of whether tenure is an item that intimately and directly affects the work and welfare of public employees. As we have recognized in the context of the public school teacher tenure statute, *N.J.S.A.* 18A:28–5, tenure "prevents school boards from abusing their superior bargaining power * * * in contract negotiations." *Spiewak v. Rutherford Bd. of Educ.,* 90 *N.J.* 63, 74 (1982). It protects employees from dismissal for "unfounded, flimsy or political reasons." *Zimmerman v. Newark Bd. of Educ.,* 38 *N.J.* 65, 71 (1962), *cert.* denied, 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L.Ed.*2d 502 (1963). Once the status of tenure is earned, it provides a measure of job security to those who continue to perform their jobs properly; and "[n]othing more directly and intimately affects a worker than the fact of whether or not he has a job." *State Supervisory Employees, supra,* 78 *N.J.* at 84.

We next must determine whether Article XIII of the labor agreement has been preempted by *N.J.S.A.* 18A:17–3. The Board constructs a conflict between Article XIII's directive that "[a]ll members of the bargaining unit shall receive tenure after

[2]For a listing of prior authority concerning public-employees-scope-of-negotiations law, see *In re IFPTE Local 195, supra,* 88 *N.J.* at 403 n. 10.

three years of employment" and what the Board perceives as the statute's mandate that tenure must be denied to those custodians who are appointed for a fixed term.

█ At the outset, we note that the mere existence of a statute or regulation relating to a given term or condition of employment does not automatically preclude negotiations. *In re IFPTE Local 195, supra,* 88 *N.J.* at 403; *State Supervisory Employees, supra,* 78 *N.J.* at 81. A public employer and majority representative are free to negotiate terms and conditions of public employment that have not been set by specific statute or regulation. Thus, "[n]egotiation is preempted only if the 'statutory or regulatory provisions * * * speak in the imperative and leave nothing to the discretion of the public employer.' " *In re IFPTE Local 195,* 88 *N.J.* at 403–04 quoting *State Supervisory Employees,* 78 *N.J.* at 80.

*N.J.S.A.* 18A:17–3 does not speak in the imperative. Rather, the statute grants the Board discretion to determine which custodians, if any, are to receive the benefits of tenure.

Every public school janitor of a school district shall [receive tenure] unless he is appointed for a fixed term.

It is clear from the statute that a janitor employed without a fixed term contract will gain tenure immediately upon beginning employment. On the other hand, the statute allows an employing board to deny tenure to all custodians, as an appointment for a fixed term is an appointment without statutory-mandated tenure.

█ Yet even though the statute provides mechanisms for immediate tenure and complete denial of tenure, these are not the only alternatives contemplated by the statute. By using the word *unless* to modify the word *shall,* the legislature has signaled its intention to leave employing boards with some flexibility. Accordingly, boards may, without contravening the terms of the statute, permissibly pick and choose between the statutory minimum of no tenure for any custodial employee and the statutory maximum of instant tenure for all custodians. Article XIII of the negotiated agreement, which grants tenure

after three years of employment, is but one example of a clause that falls between *N.J.S.A.* 18A:17–3's outer limits without derogating the statute's intent.

Inasmuch as *N.J.S.A.* 18A:17–3 leaves a school district with considerable discretion in making custodian-tenure decisions, there is no preemption hurdle blocking the negotiability of custodians' tenure rights. As we stated in *State Supervisory Employees, supra,* 78 *N.J.* 54:

> [S]tatutes or regulations concerning terms and conditions of public employment which do not speak in the imperative, but rather permit a public employer to exercise a certain measure of discretion, have only a limited preemptive effect on collective negotiation and agreement. Thus, where a statute or regulation mandates a minimum level of rights or benefits for public employees but does not bar the public employer from choosing to afford them greater protection, proposals by the employees to obtain that greater protection in a negotiated agreement are mandatorily negotiable. A contractual provision affording the employees rights or benefits in excess of that required by statute or regulation is valid and enforceable.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Where a statute sets both a maximum and a minimum level of employee rights or benefits, mandatory negotiation is required concerning any proposal for a level of protection fitting between and including such maximum and minimum. [*Id.* 78 *N.J.* at 81–82.]

As we have sought to demonstrate, under *N.J.S.A.* 18A:17–3 the maximum benefit to be gained by custodians would be immediate tenure, and the minimum benefit would be employment without tenure based upon appointment for a fixed term. Here, the majority representative has negotiated with the employer on behalf of the negotiating unit. Even though Article XIII's safeguards are better than the minimum protections provided by the statute, they do not grant a right in excess of the statutory maximum. Therefore, under the doctrine of *State Supervisory Employees* and *In re IFPTE Local 195,* we conclude that *N.J.S.A.* 18A:17–3 does not preempt Article XIII of the negotiated agreement.

The third and final prong of our test to determine the scope of public sector negotiations looks to whether negotiation of Article XIII significantly interfered with the managerial prerogatives of the Board. This test segment recognizes that

negotiation will always impinge to some extent on the determination of policy. *In re IFPTE Local 195, supra,* 88 *N.J.* at 404. Thus, in order to strike a balance between the interests of public employees and the requirements of democratic decision-making, a topic will be found nonnegotiable only if the interference with managerial prerogatives is "significant." *Id.*

In determining what is significant, our focus has been primarily upon the extent to which "students and teachers are congruently involved." *Woodstown-Pilesgrove Bd. of Educ. v. Woodstown-Pilesgrove Educ. Ass'n,* 81 *N.J.* 582, 592 (1980). Thus, where the issue involves hiring, *Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n,* 94 *N.J.* 9 (1983); teacher evaluations, *Bethlehem Township Bd. of Educ. v. Bethlehem Township Educ. Ass'n,* 91 *N.J.* 38 (1982); teacher transfers, *Ridgefield Park, supra,* 78 *N.J.* 144; or school calendar, *Burlington County College Faculty Ass'n v. Burlington County College Bd. of Trustees,* 64 *N.J.* 10 (1973), we have held the matters non-negotiable as involving a significant educational purpose. *Cf. Woodstown-Pilesgrove, supra,* 81 *N.J.* at 594 (payment for hours worked due to extension of work period on day preceding holiday from that which had previously existed involved budgetary considerations as dominant element; negotiation and binding arbitration of that matter did not "significantly or substantially trench * * * upon the managerial prerogative of the board * * *."). In each instance the congruent involvement of teacher and student implicated the local district's responsibility to ensure that "all children receive a thorough and efficient education." *Ridgefield Park, supra,* 78 *N.J.* at 165. It therefore seems clear to us that allowing the negotiation of a provision such as Article XIII does not amount to the "significant interference" of which our cases speak.

The Board insists that this matter is controlled by our conclusion in *Spiewak v. Rutherford Bd. of Educ.,* 90 *N.J.* 63, 76 (1982), that the teacher-tenure provisions of *N.J.S.A.* 18A:28-5 constitute a mandatory contractual term that may not

be waived or bargained away. Thus, respondent contends by analogy that tenure for janitors may not be negotiated. What that argument overlooks, however, is that the teachers' tenure statute is fundamentally different from the janitors' statutory tenure provision, *N.J.S.A.* 18A:17–3. The teachers' tenure statute speaks in the imperative, providing that all teachers shall have tenure after three years of employment. A teacher's statutory right to tenure cannot be altered by contract and boards have no discretion to deny a teacher tenure if he is reemployed after three years of service. Conversely, as we have taken pains to explain, *supra* at 119–120, *N.J.S.A.* 18A:17–3 grants an employing board discretion in determining whether to grant tenure to custodians.[3] Therefore, negotiation of custodians' tenure rights must be permitted within the limits delineated in *State Supervisory Employees*, 78 *N.J.* at 81–82.

## III

Not only does the instant collective-negotiations clause satisfy this Court's three part test for determining public sector negotiability, but allowing custodians to bargain for tenure rights also comports with the legislative intent behind *N.J.S.A.* 18A:17–3. Janitors were first granted statutory tenure in 1911. L.1911, c. 44. As the statute granted immediate tenure to all janitors, its purpose was to fulfill the janitors' need for help in acquiring job security. There is no reason to believe that the intent of *N.J.S.A.* 18A:17–3, which presumptively grants tenure in the absence of a fixed contract, is different from that of its predecessor.

Moreover, if the representative unit of the custodians were prohibited from negotiating job security, the result would frustrate, rather than promote, the intent of the janitors' tenure

---

[3]Even the acquisition of tenure under a negotiated labor agreement is not a promise of continued employment. *N.J.S.A.* 18A:17–3 still safeguards the boards' right to dismiss custodians because of a reduction in force or due to misconduct, inefficiency, and other good cause.

statute. In our view it is more consistent with the statutory purpose of *N.J.S.A.* 18A:17-3 to uphold the negotiated provision, which affords custodians a right to tenure after having worked for three years.

We therefore hold that inasmuch as *N.J.S.A.* 18A:17-3 does not preempt a school board's power to grant tenure to custodial employees after three years of satisfactory performance, and inasmuch as a negotiated provision to that effect advances the primary purpose of the statute without significantly interfering with educational policy, the subject is a proper topic for collective negotiations. Therefore, Article XIII of the employment contract between the East Orange Board of Education and the East Orange Personnel Association is within the scope of public-sector negotiations. Accordingly, the Board cannot now disavow that which it legally negotiated.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal* —None.