ANNETTE O'TOOLE, APPELLANT, v. LARRY FORESTAL, PRINCIPAL, PARTHENIA SMITH, DIRECTOR, MILLBURN SCHOOL FOR THE HEARING HANDICAPPED A/K/A NEW JERSEY REGIONAL DAY SCHOOL AT MILLBURN AND DIVISION OF FIELD SERVICES OF THE DEPARTMENT OF EDUCATION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 15, 1986—Decided June 30, 1986.

Before Judges FRITZ, GAYNOR and BAIME.

*Joseph Gordon* argued the cause for appellant (Gordon & Kanengiser, attorneys; *Eugene T. O'Toole* on the brief; *Joseph Gordon,* of counsel and on the brief).

*Gale P. Simon,* Deputy Attorney General, argued the cause for respondents (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Gale P. Simon,* on the brief).

The opinion of the court was delivered by

GAYNOR, J.A.D.

In this appeal, petitioner challenges the final determination of the State Board of Education affirming the Commissioner of Education's decision that the termination of petitioner's position as physical education teacher in the Regional Day School at Millburn (RDSM), a State operated school for hearing impaired children, was not arbitrary or done in bad faith, that petitioner had abandoned her tenure and seniority rights by refusing to accept a full-time position subsequently offered to her and that any claim to tenure pertained solely to RDSM and did not extend to other State operated schools for the handicapped. We agree with these conclusions and affirm the dismissal of appellant's petition.

Petitioner commenced employment as a physical education instructor at the Millburn School for the Hearing Handicapped in 1970. The school was then operated by the Millburn Board of Education. In 1971 the operation of the school was taken over by the State Department of Education and commencing with the 1982–83 school year it became a regional day school. Its name was then changed to the Regional Day School at Millburn. In January 1981, petitioner's part-time position as physical education teacher was reduced from three days a week to two days a week. This reduction in her part-time status was not challenged until November 5, 1982 when she filed the instant petition with the commissioner.

As a result of the Department of Education's determinations concerning the operating budget for RDSM and tuition charges, it was decided in July 1982 to terminate petitioner and four other teachers. The administrators of the school concluded the

elimination of petitioner's position would have a minimal impact on the school program as the required physical education could be taught by the classroom teachers. Petitioner was not offered a position at another regional day school because of the absence of any vacancies. The regional school in Jackson had hired a physical education teacher in June 1982, before petitioner's position was terminated, and the school administrator did not consider terminating that new teacher to permit petitioner's reassignment to the Jackson school.

Following the completion of the evidentiary hearing before the Administrative Law Judge, but before the record had been closed, petitioner was offered a full-time physical education instruction position covering both RDSM and the Regional Day School at Morris. A response from petitioner's attorney indicated that petitioner had relocated to Vermont and was unable to accept the position. Respondents thereupon moved for a dismissal of that portion of petitioner's claim seeking reinstatement to a teaching position in any regional day school and a determination that petitioner had abandoned her tenure rights. Petitioner filed no papers in opposition to this motion. She now asserts this was a tactical decision in pursuing her tenure rights in the proceedings then being conducted. The motion was denied by the Administrative Law Judge as he was reluctant to conclude that petitioner had abandoned these tenure rights in the absence of any direct confirmation from her. Rather, he found that the tenure and reemployment rights to her former position at RDSM had not been abandoned and that she should be afforded a reasonable time to accept or reject any offer of reemployment. This conclusion and recommendation was rejected by the commissioner and the board in its affirmance.

Petitioner now argues that as a "teaching staff member" of an educational institution for the handicapped directly operated by the State, her tenure and seniority rights are governed by N.J.S.A. 18A:60-1, and are not limited to the institution in which she was employed. She also challenges as discriminatory

and otherwise arbitrary, capricious and unreasonable respondents' decision to terminate her position. She claims as well that she has not abandoned her position nor her concomitant tenure and seniority rights by her refusal to accept the teaching positions offered her.

## I

Petitioner's rights to tenure and reemployment in case of a reduction in force are governed by *N.J.S.A.* 18A:60–1, *et seq.* The pertinent portions of this chapter provide as follows:

*N.J.S.A.* 18A:60–1.   Tenure

The services of all professors, associate professors, assistant professors, instructors, supervisors, registrars, teachers, and other persons employed in a teaching capacity, who are or shall hereafter be employed, by the commissioner, in the Marie H. Katzenbach school for the deaf or in any other educational institution, or employed in any state college or in any county college, shall be under tenure during good behavior and efficiency:

a.   after the expiration of a period of employment of three consecutive calendar years in any such institution or institutions; or

b.   after employment for three consecutive academic years together with employment at the beginning of the next succeeding academic year in any such institution or institutions; or

c.   after employment in any such institution or institutions, within a period of any four consecutive academic years, for the equivalent of more than three academic years.

An academic year, for the purpose of this section, means the period between the time school opens in the institution after the general summer vacation until the next succeeding summer vacation.

*N.J.S.A.* 18A:60–3.   Reduction of number of positions

Nothing contained in this chapter shall be held to limit the right of the commissioner in the case of any educational institution conducted under his jurisdiction, supervision or control, or of the board of trustees of a college, in the case of a college, to reduce the number of professors, associate professors, assistant professors, instructors, supervisors, registrars, teachers, or other persons employed in a teaching capacity in any such institution or institutions when the reduction is due to a natural diminution of the number of students or pupils in the institution or institutions.

\*       \*       \*       \*       \*       \*       \*       \*

Should any such professor, associate professor, assistant professor, instructor, supervisor, registrar, teacher, or other person employed in a teaching capacity under tenure be dismissed as a result of such reduction such person shall be and remain upon a preferred eligible list in the order of years of service for

reemployment, whenever vacancies occur, and shall be reemployed by the commissioner in such order, when, and if, a vacancy in a position for which such professor, associate professor, assistant professor, instructor, supervisor, registrar, teacher, or other person employed in a teaching capacity shall be qualified. Such reemployment shall give full recognition to previous years of service.

While *N.J.S.A.* 18A:60–1 provides that employment in more than one institution may be combined in calculating the requisite probationary period for earning tenure, it does not specify whether the tenure rights attained can apply to more than one institution. This question has been addressed as it relates to the tenured faculty of state or county colleges with the conclusion being reached that the legislative intent was to confine reemployment preference provided for tenured faculty to the institution where the status of tenure had been obtained. *Atty. Gen. Form. Op.* No. 28–1975. This intention was deemed to follow from the legislative purpose to grant these institutions independence and autonomy in the exercise of their governance, including appointment of members of the teaching staff and fixing their terms of employment. *Id.* Clearly, this legislative purpose would be thwarted if tenured teachers in one institution enjoyed reemployment preference rights in all other state and county colleges.

Similarly, if the regional day schools operated under the supervision of the Department of Education are separate and autonomous entities the reemployment rights of tenured teachers are limited to the school where their tenure status had been attained. The finding of the Administrative Law Judge on this issue was that

the various regional day schools created as a result of *L.*1973 c. 149 and supplemented by *L.*1979, c. 276 are autonomous entities designed to serve the very specific needs of handicapped student community in different regions of the state and, therefore, petitioner's claim to tenure is limited to available positions in her certified area to RDSM and not the other regional day schools.

The evidentiary support for this finding was summarized in the following portion of the Administrative Law Judge's Initial Decision:

The testimony of respondents' witnesses indicated that each regional day school established by the DOE is a distinct entity due to on [*sic* ] the nature and

substance of the programs offered by it and the handicapped student population served by it as well. The testimony was credible. Indeed, the respondents, through their attorney, conceded that the only instance where a system-wide faculty rights and privileges were created by Legislature was the former Garden State School District. *See N.J.S.A.* 30:4AA–1 *et seq.* (repealed); *N.J. S.A.* 18A:7B–1 *et seq., N.J.S.A.* 18A:7B–10 and *N.J.S.A.* 18A:7B–11. There is no such indication, however, of any legislative intent to make regional day schools a system of state run institutions having a common faculty. The authorizing legislation seems to imply that the regional day schools are to be autonomous entities serving the needs of the handicapped student population in different regions of the state. The autonomous nature of the regional day schools is clearly illustrated in the various contracts between the DOE and the schools in which it is indicated that the employees of the school(s) are to be the employees of that entity and shall be subject to all rights and benefits from that local entity. [Citation omitted.]

We are satisfied from our review of the proceedings that these findings and conclusions are supported by sufficient credible evidence in the record. *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–484 (1974).

Furthermore, as the right to tenure is statutory, a legislative source for tenure rights is essential. *Lukas v. State of New Jersey,* 103 *N.J.* 126 (1986). Petitioner has not cited to us, nor have we discovered, any statutory authority for the premise that tenure rights of teachers in State schools for the handicapped apply to schools other than where their tenure was attained. Rather, the statutory scheme seemingly is to confine the exercise of such rights to the educational institution or the local school district where the teacher was employed when tenure was acquired. *See Atty.Gen.Form.Op.* No. 28 1975; *N.J.S.A.* 18A:28–12.

The only instance where tenure and seniority rights extended system-wide was in the now repealed Garden State School District established by the Legislature to provide and operate schools in correctional institutions. There, the statute expressly provided for a system-wide faculty with system-wide tenure privileges. *N.J.S.A.* 30:4AA–1, *et seq.* repealed by *N.J.S.A.* 18A:7B–1, *et seq.* Absent a similar clear statement of intent that the tenure rights of teachers in State schools for handi-

capped apply to schools other than where they are employed, we will not attribute such an intent to the Legislature.

## II

■ Petitioner's contention that the termination of her position as physical education teacher at RDSM was not done in good faith and was thus discriminatory, arbitrary, capricious and unreasonable is without merit. As there was ample evidence that economic reasons were the sole cause for eliminating petitioner's position, the decision of the State Board deserves our deference. *See Dore v. Bedminster Tp. Bd. of Ed.*, 185 *N.J.Super.* 447, 453 (App.Div.1982).

It was clearly established that the teaching staff at RDSM was reduced because of the decreased enrollment and to avoid a sharp tuition increase. In determining which teachers were to be terminated, it was concluded that the physical education instruction position could be eliminated without seriously affecting the school program as the subject could be handled by classroom teachers. While physical education was a required part of the curriculum, it did not have to be taught by a certified physical education instructor. *N.J.A.C.* 6:29–6.1 permitted classroom teachers to assume the responsibility for physical education instruction in schools not having a certified physical education teacher. Considering the financial exigency presented in planning for the 1982–83 school year, petitioner's dismissal was a reasonable exercise of the school administrators' authority under *N.J.S.A.* 18A:60–3, *See Council of N.J. State College Locals v. State Bd. of Higher Ed.*, 181 *N.J.Super.* 179, 190 (App.Div.1981) mod. on other grounds 91 *N.J.* 18 (1982).

## III

■ In accordance with the provision of *N.J.S.A.* 18A:60–3 requiring that any tenured teacher dismissed because of a reduction of force "shall be reemployed ... when, and if, a

vacancy [occurs] in a position for which such ... teacher ... shall be qualified," petitioner was offered the physical education position at RDSM and the Morris school following her dismissal. Her refusal of this employment was deemed by the commissioner, and concurred in by the board, as constituting an abandonment of her rights to tenure and reemployment. Although the only reason given at that time for rejecting the offer of reemployment was her reluctance to relocate from her residency in Vermont to New Jersey, she now asserts the position was refused as it would have affected her claim in the pending proceedings for system-wide tenure.

We agree with the commissioner's conclusions, despite the absence of findings in support of his determination or a specification of reasons for modifying the initial decision as required by *N.J.A.C.* 1:1–16.5(b), as it is evident that, under the circumstances presented, petitioner's rejection of the position resulted, as a matter of law, in an abandonment of her rights to reemployment.

■ Tenure and reemployment rights may be voluntarily relinquished. *N.J.S.A.* 18A:28–8; *see Lange v. Bd. of Ed. of Borough of Audubon*, 26 *N.J.Super.* 83, 88 (App.Div.1953); *see also Jacobs v. School Dist. of Wilkesbarre Tp.*, 355 *Pa.* 449, 50 *A.*2d 354 (Sup.Ct.1947); *State ex rel. Ford v. Board of Education of City School Dist. of City of Cleveland*, 141 *Ohio St.* 124, 47 *N.E.*2d 223 (Sup.Ct.1943). The Department of Education has consistently recognized that the refusal of reemployment by a tenured teacher, dismissed because of a reduction in force, constitutes a relinquishment of tenure and a waiver of rights to future employment. *See Boguszewski v. Bd. of Ed. of Demarest*, 1979 *S.L.D.* 398; *DeSimone v. Fairview Bd. of Ed.*, 1966 *S.L.D.* 43. Of course, to constitute an effective waiver, it must be evident that a known right was intentionally relinquished. While petitioner may not have directly confirmed the rejection of the position offered, as the Administrative Law Judge considered necessary, undoubtedly her attorney's com-

munication was known to and authorized by petitioner. Being charged with knowledge of the legal effect of the rejection, the refusal of reemployment resulted in an effective waiver of petitioner's tenure and reemployment rights. We note, as did the commissioner, that petitioner made no response to the motion before the Administrative Law Judge or the exceptions to his determination, pertaining to petitioner's waiver of reemployment rights, nor does she now claim that her decision not to accept the offered position was made without knowledge of the effect of such refusal.

The decision of the State Board of Education dated September 5, 1984 is affirmed.