SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Catherine Parsells v. Board of Education of the Borough of Somerville**
**(A-21-22) (087261)**

**Argued March 14, 2023 -- Decided June 12, 2023**

**FASCIALE, J., writing for a unanimous Court.**

The Board of Education of the Borough of Somerville challenges the award of relief to former teacher Catherine Parsells in this tenure dispute. The Court considers whether the Appellate Division erred by imposing a duty on school boards to "notify, in advance, full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their full-time position consistent with the principles espoused in Bridgewater-Raritan Education Ass'n v. Board of Education of Bridgewater-Raritan School District, 221 N.J. 349 (2015)." 472 N.J. Super. 369, 372 (App. Div. 2022). The Court also considers whether, under principles of common law waiver, the circumstances show that Parsells knowingly waived her tenured right to a full-time teaching position by temporarily transferring to a part-time teaching position.

The Board employed Parsells as a full-time preschool teacher from September 2010 to June 2016. Parsells earned tenure in 2013. In May 2016, she wrote to the superintendent, expressing an interest in a temporary part-time preschool teaching position that includes health benefits "for as long as [such a position] is available, or until my family decides that full-time work would be in our best interests again," so that she could "pursu[e] [her] career goals while also being able to spend time with [her] son during his precious first few years."

Even though Parsells never formally applied for a part-time teaching job, and without addressing her assertion that she understood that her switch would be temporary, the superintendent notified Parsells that the Board "approved [her] transfer from the position of full-time preschool teacher to the position of part-time . . . preschool teacher for the 2016-2017 school year." Parsells began the 2016-17 school year as a part-time tenured teacher with health benefits.

After requesting and receiving approval for maternity leave followed by a childcare leave of absence from February through June 2017, Parsells re-expressed interest in remaining a temporary part-time teacher for the 2017-18 school year,

1

provided the position continued to include health benefits.  She received a voicemail response indicating that health benefits would not be available for the part-time position and then a second voicemail -- from the new superintendent -- stating that the school "might have to add a preschool" class, which "would be a full-time position."  Parsells then extended her leave for the 2017-18 school year.

In April 2018, while Parsells remained on an extended leave of absence, the new superintendent contacted her about the 2018-19 school year.  He reiterated that she could work as a part-time teacher but without health benefits.  As to working as a full-time teacher, he told Parsells that if a position became available, she would need to apply for it.  In an email to the school's principal, the new superintendent noted that Parsells "was under the impression that she had the option of coming back full-time if she wanted to" and had "stated that if she had known all of this before changing to part-time, she would not have made the change."  Parsells returned to her part-time tenured teaching job in September 2018, but without health benefits.

Parsells then applied for a full-time teaching position and "all other positions for which she was certified."  The Board rejected her applications for at least six full-time jobs, hiring non-tenured teachers from outside the district for at least some of those positions.  Parsells found employment elsewhere.  She filed a petition alleging that the Board had violated her tenure rights by hiring non-tenured teachers for the full-time positions to which she applied and that she had not voluntarily relinquished her tenure rights by moving temporarily to a part-time position.

An administrative law judge (ALJ) found that Parsells had voluntarily changed her full-time teaching status, that her tenure and seniority protections were therefore not triggered, and that the Board therefore did not violate her rights.  The Commissioner reversed for three reasons:  (1) the ALJ failed to resolve whether Parsells "knowingly and voluntarily waived her tenure rights to her full-time position"; (2) the Commissioner was unpersuaded that there was no notice obligation under Bridgewater-Raritan in the circumstances of the case; and (3) extending leave for the 2017-18 school year did not "constitute a waiver of her tenure rights."

The Appellate Division affirmed the Commissioner's final agency decision and explicitly extended Bridgewater-Raritan to impose a duty on school boards to "provide advance notice to their tenured full-time teachers that they may not get their full-time teaching job back if they voluntarily take a part-time teaching job." 472 N.J. Super. at 378.  The Court granted certification.  252 N.J. 327 (2022).

**HELD:**  Parsells did not knowingly waive her tenured right to a full-time teaching position, and the Court therefore affirms the Appellate Division's decision upholding the Commissioner's award of "full back pay, benefits, and emoluments, less mitigation."  But the Court rejects the extension of Bridgewater-Raritan to

2

impose a duty on school boards to notify, in advance, full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their full-time position.

1.  The Tenure Act provides that tenured teachers "shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause." N.J.S.A. 18A:28-5.  The question is whether the circumstances show that by voluntarily switching to a part-time teaching position temporarily, Parsells knowingly waived her right -- otherwise protected by her tenure status -- to a full-time teaching position clearly, unequivocally, and decisively.  The Court reviews the evidence presented in detail and finds that the Board presented no proofs to show Parsells waived or abandoned her known right to full-time employment as a tenured teacher "either by design or indifference," or that she did so "clearly, unequivocally, and decisively." See Knorr v. Smeal, 178 N.J. 169, 177 (2003).  Instead, the circumstances surrounding Parsells' expressed interest and the Board's subsequent approval clearly show that she believed she had a right, as a tenured teacher, to return to work full-time and that she did not knowingly waive or abandon that right.  (pp. 12-18)

2.  It was error, however, to extend Bridgewater-Raritan to impose a duty on school boards to notify tenured teachers in advance that if they work part-time after working full-time, they might not have a right to return to the full-time position. Bridgewater-Raritan is a different case.  The Court there interpreted the term "designate" in a statute not at issue here -- N.J.S.A. 18A:16-1.1 -- to impose an obligation that school boards make applicable employees "aware that [they are] being employed as a 'replacement,'" because that designation "takes the employee off the normal service road toward tenure." See 221 N.J. at 361.  Here, there is no use of the term "designate" and indeed no specific provision of the Tenure Act that counsel have asked the Court to interpret.  The "mere existence of the Tenure Act" does not supply a rationale for the imposition of a duty to notify.  (pp. 18-20)

3.  Although there is no legal basis for a duty to notify here, the Court encourages school boards to address, at the time the request for part-time work is made, whether the tenured teacher is voluntarily and knowingly waiving rights to a full-time teaching position.  Any waiver of a teacher's tenure rights must be clear, knowing, and unequivocal.  School boards, of course, may reject requests for part-time work for managerial and staffing reasons, among other grounds.  (pp. 20-21)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-21 September Term 2022

087261

Catherine Parsells,

Petitioner-Respondent,

v.

Board of Education
of the Borough of Somerville,
Somerset County,

Respondent-Appellant.

On certification from the Superior Court,
Appellate Division, whose opinion is reported at
472 N.J. Super. 369 (App. Div. 2022).

| Argued | Decided |
|--------|---------|
| March 14, 2023 | June 12, 2023 |

Marc H. Zitomer argued the cause for appellant
(Schenck, Price, Smith & King, attorneys; Marc H.
Zitomer, of counsel and on the briefs, and Christopher J.
Sedefian, on the briefs).

Christopher Weber, Deputy Attorney General, argued the
cause for respondent New Jersey Commissioner of
Education (Matthew J. Platkin, Attorney General,
attorney; Sookie Bae-Park, Assistant Attorney General,
of counsel, and David L. Kalisky, Deputy Attorney
General, on the brief).

Hop T. Wechsler argued the cause for respondent
Catherine Parsells (Selikoff & Cohen, attorneys; Hop T.
Wechsler, of counsel and on the brief).

1

Albert J. Leonardo argued the cause for amicus curiae New Jersey Education Association (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Albert J. Leonardo, of counsel and on the brief, and Richard A. Friedman, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

The Board of Education of the Borough of Somerville challenges the award of relief to former teacher Catherine Parsells in this tenure dispute. The Board argues primarily that the Appellate Division erred by imposing a duty on school boards to "notify, in advance, full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their full-time position consistent with the principles espoused in Bridgewater-Raritan Education Ass'n v. Board of Education of Bridgewater-Raritan School District, 221 N.J. 349 (2015)." Parsells v. Bd. of Educ. of Somerville, 472 N.J. Super. 369, 372 (App. Div. 2022). We agree with the Board that Bridgewater-Raritan and "the mere existence of the Tenure Act" provide no basis for a notification duty, and we find the Appellate Division's imposition of a duty to constitute error. Instead, we premise our decision on principles of common law waiver.

Parsells was a tenured pre-school teacher who worked full-time. She expressed interest in switching temporarily to a part-time teaching position to

spend more time with her newborn son, specifying her understanding that she would later be able to return to a full-time position.  Without addressing Parsells' assertion that she understood that her switch would be temporary, the Board approved her transfer to a part-time position.  A few years later, Parsells sought to return to work full-time and applied for several full-time teaching positions for which she was certified.  The Board instead hired non-tenured teachers and maintained that by switching to part-time, Parsells had waived her right to a full-time position.

We concur with the Commissioner of Education that Parsells did not knowingly waive her tenure right to a full-time teaching position.[1]  Generally, under longstanding common law principles, "[t]he intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference."  Knorr v. Smeal, 178 N.J. 169, 177 (2003).  It is well-established that "[t]he party waiving a known right must do so clearly, unequivocally, and decisively." Ibid.  There was no valid waiver here.

Although we impose on school boards no duty to notify employees in Parsells' position of the ramifications of their decision to work part-time, we

---

[1] The administrative law judge and the appellate court did not explicitly address the waiver question, for different reasons.

3

affirm as modified the appellate court's judgment, which upheld those parts of the Commissioner's decision that (1) determined Parsells did not knowingly waive her tenure right to a full-time teaching position, and (2) awarded her "full back pay, benefits, and emoluments, less mitigation."

## I.

### A.

We summarize the facts based on the record presented to the administrative law judge (ALJ). The Board employed Parsells as a full-time preschool teacher from September 2010 to June 2016. In 2013, she earned tenure as a teacher in the Somerville public school district. On May 2, 2016, she wrote to Dr. Timothy Purnell, the superintendent at the time, expressing an interest in a temporary part-time preschool teaching position:

> I am writing to express my interest in obtaining a part-time job as a preschool teacher that includes health benefits. I would be interested in this position for as long as it is available, or until my family decides that full-time work would be in our best interests again. . . . I am very appreciative of being given the opportunity to be considered for a position that would allow me to continue working as a teacher pursuing my career goals while also being able to spend time with my son during his precious first few years.

Approximately two weeks later, and even though Parsells never formally applied for a part-time teaching job, Dr. Purnell notified Parsells that the Board "approved [her] transfer from the position of full-time preschool teacher

4

to the position of part-time . . . preschool teacher for the 2016-2017 school year." Board minutes confirmed that the Board "ABOLISH[ED] one full[-]time preschool teacher [position]." About two months later, the Board designated Parsells as a preschool team leader for the upcoming 2016-17 school year. Parsells began the 2016-17 school year as a part-time tenured teacher with health benefits.

In anticipation of delivering her baby in the spring of 2017, Parsells requested maternity leave followed by a childcare leave of absence from February 2, 2017, to June 30, 2017. She obtained approval for that request and wrote to Dr. Purnell on February 1, 2017, re-expressing her interest in remaining a part-time teacher for the 2017-18 school year, provided the position continued to include health benefits. She did not receive a response until several months later.

Dr. Purnell remained superintendent until June 30, 2017. A week later, after he was no longer the superintendent, Dr. Purnell left Parsells a voicemail explaining for the first time that her part-time teaching position for the 2017-18 school year would not include health benefits. Elaborating on entitlement to those benefits, Dr. Purnell stated, "the part-time [job] would not be with benefits, full-time would be with benefits." The next day, Dr. Timothy Teehan, Dr. Purnell's successor as superintendent, left Parsells a voicemail.

5

He explained that her health benefits were no longer justified because she stopped doing "extra stuff . . . like team leader." At the end of Dr. Teehan's voicemail, and without expressly offering her re-employment as a full-time teacher, he stated that "we might have to add a preschool . . . course . . . and if that were the case, it would be a full-time position -- but I won't know that for about two weeks, so -- that's what I have for right now." After receiving Dr. Teehan's voicemail, Parsells extended her leave for the 2017-18 school year and expressed her intention to return to work September 1, 2018.

In mid-April 2018, while she remained on an extended leave of absence, Dr. Teehan contacted Parsells about the 2018-19 school year. He reiterated that she could work as a part-time teacher but without health benefits. As to working as a full-time teacher, he told Parsells that if a position became available, she would need to apply for it. Dr. Teehan was not involved in the May 2016 informal communication between Parsells and Dr. Purnell about her request to work part-time temporarily with health benefits, or in the Board's quick approval of the transfer. In mid-April 2018, Dr. Teehan emailed Parsells' principal about his unfamiliarity with those details:

> I am not sure why, but [Parsells] was under the impression that she had the option of coming back full-time if she wanted to. I had never stated any such thing when I told her in the beginning of July [2017] that she would not have benefits anymore.

6

> . . . .

> [Parsells] shared how she put deposits on daycare and made necessary arrangements [for childcare] . . . . [Parsells] stated that if she had known all of this before changing to part-time, she would not have made the change.

Parsells returned to her part-time tenured teaching job in September 2018, but without health benefits.

Parsells then applied for a full-time teaching position and "all other positions for which she was certified." Although the Board interviewed Parsells, which included observing her demonstrate a teaching lesson, it did not hire her. The Board rejected her applications for at least six full-time jobs. The record does not clearly reflect whether the Board hired tenured teachers for any of those six full-time positions, but for at least some of those positions, it hired non-tenured teachers from outside the district. Without health benefits as a part-time teacher, and because the Board filled the available full-time positions, Parsells found employment elsewhere.

### B.

Parsells filed a petition in which she alleged that the Board violated her tenure rights by hiring non-tenured teachers for the full-time positions to which she applied. Parsells also alleged that she had not voluntarily relinquished her tenure rights by moving temporarily to a part-time position.

7

The ALJ conducted a two-day hearing and took testimony from Parsells, Dr. Purnell, and Dr. Teehan. The ALJ found Parsells and Dr. Teehan credible, and although Dr. Purnell "relayed a reluctance to answer questions," the ALJ noted that his testimony was "consistent internally with the documentary and other evidence produced during the hearing." We defer to those credibility findings.

At the end of the hearing, the ALJ dismissed Parsells' petition. The ALJ determined that Parsells did not work part-time because of a reduction in force (RIF). Instead, she found that Parsells changed her full-time teaching status on her own, voluntarily requesting a part-time teaching position. Accordingly, the ALJ concluded that Parsells' tenure and seniority protections were not triggered, and that the Board therefore did not violate her rights. The ALJ found that the Board had no obligation to notify Parsells of the "consequences of her decision" before approving the transfer from a full-time tenured position to a part-time position with health benefits. The ALJ concluded that Bridgewater-Raritan provided no basis for the imposition of any such duty on school boards. Because the ALJ found that the Board did not violate Parsells' rights, she did not analyze whether Parsells had knowingly and voluntarily waived her tenure rights to a full-time position or whether she understood that she would not have the right to return full-time.

8

## C.

The Commissioner reversed the ALJ's decision for three reasons. First, the Commissioner determined that the ALJ failed to resolve whether Parsells "knowingly and voluntarily waived her tenure rights to her full-time position." Although the Commissioner agreed that Parsells voluntarily moved from a full-time position to a part-time one, the Commissioner concluded that the ALJ disregarded "the circumstances surrounding [Parsells'] decision, which [the Commissioner found] clearly demonstrate[d] that [Parsells] did not knowingly and voluntarily waive her right to a full-time position." Second, the Commissioner disagreed with the ALJ's reading of Bridgewater-Raritan. The Commissioner was "unpersuaded that the Board has no notice obligation in the circumstances at issue," finding that the lack of statutory authority imposing a notice obligation is "not dispositive in light of the broad protective purpose of the Tenure Act." Third, the Commissioner found that extending her leave for the 2017-18 school year, which was "a temporary situation" and contractually permitted, instead of accepting a full-time position, did not "constitute a waiver of her tenure rights."

## D.

The Appellate Division, in a published opinion, affirmed the Commissioner's final agency decision and explicitly extended Bridgewater-

9

Raritan to impose a duty on school boards to "provide advance notice to their tenured full-time teachers that they may not get their full-time teaching job back if they voluntarily take a part-time teaching job." Parsells, 472 N.J. Super. at 378. The appellate court noted that "the mere existence of the Tenure Act supplies the rationale for the imposition of such a duty." Id. at 378-79. The appellate court did not analyze whether Parsells knowingly waived her tenure rights to a full-time position when she voluntarily requested to work temporarily as a part-time teacher. But it affirmed the Commissioner's decision, see id. at 380, which, as discussed above, included a finding that there was no knowing waiver. Nevertheless, the emphasis of the appellate court's opinion was on the Board's purported duty to notify under Bridgewater-Raritan. See id. at 376-80.

We granted the Board's petition for certification. 252 N.J. 327 (2022). We also granted the New Jersey Education Association's (NJEA) motion to appear as amicus curiae.

## II.

On appeal, the Board argues primarily that the Appellate Division erred by interpreting Bridgewater-Raritan to impose a duty on school boards to "notify, in advance, full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their

10

full-time position." The Board contends the appellate court erroneously concluded that "the mere existence of the Tenure Act supplies the rationale for the imposition of such a duty." The Board essentially conceded at oral argument that if, under the specific facts of this case, Parsells did not knowingly waive her right to a full-time teaching position, then she would indeed be entitled to "full back pay, benefits, and emoluments, less mitigation."

Parsells contends that the Appellate Division properly imposed the duty to provide notice but maintains that, even without such an obligation, the Board has not shown that she knowingly waived her tenure rights to a full-time teaching position. Parsells contends that, before the transfer, she knew that she had earned tenure and argues further that the circumstances surrounding her request to work part-time do not clearly show that she abandoned her tenure rights to a full-time teaching position. Instead of "clearly, unequivocally, and decisively" waiving those rights, Parsells asserts, she expected to return as a full-time teacher when the timing made sense for her family.

The Commissioner maintains that the circumstances surrounding Parsells' decision to move from a full-time position to a part-time position clearly demonstrate that she did not knowingly and voluntarily waive her

11

tenure rights to a full-time position.  The Commissioner reiterates that Parsells did not voluntarily relinquish her tenure rights when she extended leave for the 2017-18 school year.  Assuming the Board offered Parsells a full-time position for the 2017-18 year -- which the Commissioner's decision reflects was not clearly established in the record -- and relying on Bridgewater-Raritan, the Commissioner argues further that the Board failed to "warn Parsells of the potential consequences of extending her initial maternity leave."

The NJEA contends that the Appellate Division correctly applied the rationale of Bridgewater-Raritan to impose a notice duty on school boards.  It argues that the appellate court properly affirmed the Commissioner's decision that, for a teacher like Parsells to waive tenure rights to a full-time teaching position, the "employing school district must first provide notice" that she might not get her full-time teaching job back.  The NJEA maintains that Parsells did not waive her tenure rights to a full-time teaching position when she voluntarily requested to work temporarily as a part-time teacher with health benefits.

### III.

Judicial review of quasi-judicial agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011)).  We review

12

agency decisions under an arbitrary and capricious standard.  Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019).  We "'must be mindful of, and deferential to, the agency's "expertise and superior knowledge of a particular field."'"  Allstars, 234 N.J. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)).

Once tenure is earned, "it provides a measure of job security to those who continue to perform their jobs properly."  Wright v. Bd. of Educ. of City of E. Orange, Essex Cnty., 99 N.J. 112, 118 (1985).  The Tenure Act protects the rights of teachers by providing that tenured teachers "shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause."  N.J.S.A. 18A:28-5.  The question is whether the circumstances show that by voluntarily switching to a part-time teaching position temporarily, Parsells knowingly waived her right -- otherwise protected by her tenure status -- to a full-time teaching position "clearly, unequivocally, and decisively."  Knorr, 178 N.J. at 177.

The context of Parsells' request is important.  The ALJ noted that the Board "approved her application for a new [part-time] position with no reference to a temporary position."  Without analyzing the waiver question, the appellate court referenced generally that in mid-April 2018, Dr. Teehan

13

"informed Parsells . . . that she relinquished her rights . . . when she applied for and accepted the part-time role." Parsells, 472 N.J. Super. at 374. But those two points do not fully consider the circumstances surrounding Parsells' request or clearly establish that she at any time knowingly waived her rights as a full-time teacher under the Tenure Act, or that she understood that by working part-time, she might not have the right to return to a full-time teaching position.

The record reflects that Parsells merely expressed interest in a temporary part-time teaching position with health benefits. As Dr. Purnell testified, the part-time job was "not a new position . . . so [the] regular application procedures would not apply to [Parsells'] situation." Dr. Teehan, who did not communicate with Parsells in May 2016, may have later informed Parsells that he believed she voluntarily relinquished her full-time tenured teaching position, but that simply shows that the Board unilaterally treated the approved transfer as a waiver of her tenure rights.

A tenured teacher seeking to resign from a position must comply with N.J.S.A. 18A:28-8,[2] which if applicable would have required Parsells to

---

[2] N.J.S.A. 18A:28-8, entitled "Notice of intention to resign required," provides:

> Any teaching staff member, under tenure of service, desiring to relinquish his position shall give the

14

provide notice of her intention to relinquish her position. Parsells gave no such notice because she expected to resume full-time teaching based on her tenure. As the Commissioner held, she voluntarily relinquished no position or tenure rights. By voluntarily transferring with Board approval to a part-time position temporarily, Parsells did not therefore automatically lose her tenure rights.

The Board argues that after she went part-time, Parsells rejected an offer to return to a full-time teaching position. The Board contends therefore that she abandoned her tenure right to a full-time teaching position, as would have been the case if she was the subject of a RIF and rejected an offer to return full-time. Although the Board maintains it approved Parsells' request rather than subjecting her to a RIF, it contends nevertheless that by rejecting an offer of re-employment, she waived her tenure rights.

First, this is not a situation where a teacher was subject to a RIF, placed on a recall list, and intentionally abandoned tenure rights by refusing re-

employing board of education at least 60 days written notice of his intention, unless the board shall approve of a release on shorter notice and if he fails to give such notice he shall be deemed guilty of unprofessional conduct and the commissioner may suspend his certificate for not more than one year.

15

employment. Cf. N.J.S.A. 18A:28-9 (outlining when a RIF takes place); id. at -12 (explaining the right to re-employment for teachers subjected to a RIF, based on tenure and seniority); see also O'Toole v. Forestal, 211 N.J. Super. 394, 402-03 (App. Div. 1986) (recognizing that "the refusal of re[-]employment by a tenured teacher, dismissed because of a [RIF], constitutes a relinquishment of tenure and a waiver of rights to future employment" but only if it is "evident that a known right was intentionally relinquished"). The Board acknowledges that this is not a RIF case. Second, the record does not clearly reflect that the Board offered Parsells re-employment as a full-time teacher, as the Commissioner explained. We need look no further than the voicemail evidence.

Dr. Purnell, the former superintendent, did not expressly offer Parsells a full-time teaching job for the 2017-18 school year. He merely clarified that "the part-time [job] would not be with benefits, full-time would be with benefits." We draw no inference that his clarification meant a full-time teaching position was open, that he offered her the job, and that she then declined full-time re-employment. Indeed, it is not entirely clear that Dr. Purnell had authority to act on the Board's behalf in July 2017, when he left the voicemail, since he was no longer the superintendent.

16

Similarly, Dr. Teehan, who was the superintendent at that time, did not expressly offer Parsells a full-time teaching job for the 2017-18 school year. In the summer of 2017, he told Parsells "we might have to add a preschool . . . course . . . and if that were the case, it would be a full-time position -- but I won't know that for about two weeks, so -- that's what I have for right now." In mid-April 2018, Dr. Teehan confirmed he never told Parsells in July 2017 that she "had the option of coming back full-time if she wanted to." It would be illogical to conclude that, in the summer of 2017, Parsells declined an offer of re-employment for the 2017-18 school year given Dr. Teehan's later admission that he never told her she could return full-time.

If anything, the 2017 voicemails support Parsells' belief that she would be entitled to resume a full-time teaching job. Even if the Board had offered her re-employment as a full-time tenured teacher, Parsells exercised her contractual right to extend her leave. Doing so is not evidence that she "clearly, unequivocally, and decisively" waived her tenured right to a full-time position. As the Commissioner correctly concluded, an extended leave of absence can hardly be equated with a knowing waiver of tenure rights by declining re-employment.

The Board initially worked with Parsells to accommodate her personal situation. But the Board presented no proofs to show that Parsells waived or

abandoned her known right to full-time employment as a tenured teacher "either by design or indifference," or that she did so "clearly, unequivocally, and decisively." Knorr, 178 N.J. at 177. Instead, the circumstances surrounding Parsells' expressed interest and the Board's subsequent approval clearly show that she believed she had a right, as a tenured teacher, to return to work full-time and that she did not knowingly waive or abandon that right. Indeed, the parties stipulated as much before the ALJ by acknowledging that Parsells' interest in a part-time preschool position was for "as long as it is available or until my family decides that full-time work would be in our best interests again," and that she appreciated the opportunity to pursue her career goals during her son's "first few years." Thus, like the Commissioner, we cannot conclude that the relevant circumstances surrounding her approved transfer to part-time clearly show that Parsells waived her tenured right to full-time employment.

IV.

Finally, it was error for the Appellate Division to extend Bridgewater-Raritan to impose a duty on school boards to notify tenured teachers in advance that if they work part-time after working full-time, they might not have a right to return to a full-time position. Bridgewater-Raritan is a different case. The Court there analyzed N.J.S.A. 18A:16-1.1 (permitting school boards

18

to "designate" temporary employees), a statute that created an exception to the general rule stated in N.J.S.A. 18A:28-5 that teachers ordinarily obtain tenure in a position when they serve for certain periods of time. The Court interpreted the term "designate" in N.J.S.A. 18A:16-1.1 to impose an obligation that school boards make applicable employees "aware that [they are] being employed as a 'replacement,'" because "the specialized designation [as a replacement] . . . takes the employee off the normal service road toward tenure." Bridgewater-Raritan, 221 N.J. at 361.

It is true that the Court in Bridgewater-Raritan rejected the school board's contention that notice obligations were inappropriate under N.J.S.A. 18A:16-1.1 because, in contrast to its approach to notice in other parts of the Tenure Act,[3] the Legislature did not explicitly require notice. Id. at 362. Indeed, the Court was "unpersuaded that the specific type of notice required in those statutes compels the conclusion that the Legislature intended to forgo any notice obligation under N.J.S.A. 18A:16-1.1." Ibid. But the Court imposed a notice obligation based on its interpretation of the word "designate"

---

[3] See, e.g., N.J.S.A. 18A:6-4.15 (requiring notice to applicant of qualification for employment following criminal history background check); N.J.S.A. 18A:6-11 (requiring written notice of charges to tenured teachers in order to commence a process for dismissal or reduction in salary); N.J.S.A. 18A:27-10 (requiring notice to non-tenured teachers of either renewal or non-renewal of an employment contract by May 15 of each year, with continued employment being the consequence of non-notice under N.J.S.A. 18A:27-11).

in N.J.S.A. 18A:16-1.1 of the Tenure Act, holding that the plain meaning of the term "contemplates that a person, who is 'designated' as having some conferred status is informed that he or she has been so designated or is made aware of that conferred status." Id. at 360-61. Here, there is no use of the term "designate" and indeed no specific provision of the Tenure Act that counsel have asked us to interpret. Contrary to the appellate court's conclusion, the "mere existence of the Tenure Act" does not supply a rationale for the imposition of a duty to notify.

The Board's counsel pointed out to us at oral argument that some school boards are giving notice in advance to full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their full-time position. Presumably that is being done because the appellate court imposed such a duty. There is no basis for that duty.

Nonetheless, we encourage school boards to address, at the time the request for part-time work is made, whether the tenured teacher is voluntarily and knowingly waiving rights to a full-time teaching position. Any waiver of a teacher's tenure rights must be clear, knowing, and unequivocal. School boards, of course, may reject requests for part-time work for managerial and staffing reasons, among other grounds.

20

## V.

We conclude that Parsells did not knowingly waive her tenured right to a full-time teaching position by temporarily transferring to a part-time teaching position with Board approval and, like the appellate court, uphold the Commissioner's final agency decision awarding Parsells "full back pay, benefits, and emoluments, less mitigation." We reject the imposition of a duty on school boards to "notify, in advance, full-time teachers who consider voluntarily transferring to part-time teaching positions that they may not have a right to return to their full-time position." But the absence of such a duty does not affect our conclusion on independent grounds that Parsells did not waive her right to a full-time position.

We affirm as modified the judgment of the Appellate Division.


CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.

21